The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner George T. Glenn, II and the briefs and arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the entire record of evidence, the Full Commission reverses the holding of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in the Pre-Trial Agreement and at the hearing on 20 July 1998 as:
 STIPULATIONS
1. All the parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. There existed an employee-employer relationship between plaintiff and defendant-employer at all relevant times herein.
3. Plaintiffs average weekly wages are to be determined from a Form 22 submitted following the hearing before the Deputy Commissioner.
4. Defendant-employer was an approved self-insured with Constitution State Service Company acting as its administrator at all relevant times herein.
5. The issues to be determined are as follows:
 a) Whether plaintiff sustained an injury by accident or developed an occupational disease as a result of her employment with defendant-employer?
 b) If so, what, if any, workers compensation benefits is plaintiff entitled to receive as a result of any compensable injury she may have sustained?
 ***********
Based upon all of the competent evidence adduced from the record, the undersigned makes the following additional
 FINDINGS OF FACT
1. Plaintiff is a 30-year old woman with a twelfth grade education and one and a half years of college. Plaintiff is right hand dominant. She began working for Defendant October 19, 1994 as a "picking" associate.
2. Plaintiffs job as a "picking associate was a production job requiring her to push a cart down long aisles of inventory and select womens lingerie garments from bins. Plaintiff held the items picked from the bins in one hand while continuing to pick with the other hand. Plaintiff would hold up to 30 items in one hand while picking with the other. Plaintiff alternated hands as fatigue dictated. Plaintiff was also required to fold each item for shipping. Plaintiff would generally complete between 15 and 20 order tickets per hour. Each ticket normally had 100 to 150 items listed. Plaintiff worked five or six days per week, eight hours per day. Each day plaintiff had two fifteen-minute breaks and one thirty-minute lunch break. Plaintiff was expected to work as fast as possible to complete as many orders as she could during her shifts.
3. In May of 1996 Plaintiff began to experience pain, numbness, and swelling in both hands. Plaintiff reported her problems to her supervisor and was sent to the company nurse. Plaintiff was placed in a light duty job. Plaintiff was sent to Dr. Costner, the company physician, who diagnosed possible bilateral wrist tendinitis. Dr. Costner prescribed ibuprofen and splints to be worn while plaintiff worked and slept. Dr. Costner noted no improvement and ordered nerve conduction studies and placed plaintiff in therapy.
4. Plaintiff saw her family doctor about her deteriorating condition. Plaintiff was immediately referred plaintiff to a neurosurgeon, Dr. Sweet. Dr. Sweet examined plaintiff in September 1996 and noted positive bilateral Phalens and Tinels signs. Dr. Sweet scheduled plaintiff for a left carpal tunnel release later in September 1996.
5. Dr. Sweet performed the surgery as scheduled and monitored plaintiffs right hand. Dr. Sweet determined a right carpal tunnel release was necessary and performed this surgery on 25 March 1997.
6. Defendant-employer terminated plaintiff on 5 April 1997, ostensibly for having too many errors. Prior to filing her workers compensation case in October 1996, plaintiff had worked for over 2 years, consistently making her expected production rate with no errors over the allowance and no written warnings. However, plaintiff received a written warning each month of 1997 through March. Plaintiff was fired after the third written warning.
7. The video submitted by defendants and admitted into evidence does not reflect the nature of the job duties completed by plaintiff in that the pace of work depicted is substantially slower than what was expected of plaintiff.
8. Plaintiffs bilateral carpal tunnel syndrome was caused by her employment duties with defendant-employer.
9. Plaintiffs employment with defendant-employer placed her at an increased risk of developing carpal tunnel syndrome as compared to members of the general public not so employed.
10. The increased risk opinion given in this case by Dr. Sweet is given greater weight than that of Dr. Hardigre. Dr. Sweet is an independent neurologist who treated plaintiff. Dr. Hardigre is an orthopedist retained by defendant-employer who did not treat plaintiff.
11. Plaintiff had no disabling hand problems prior to working for Defendant-employer.
12. The causation opinion given in this case by Dr. Sweet is given greater weight than that of Dr. Hardigre. Dr. Sweet an independent neurologist who treated plaintiff. Dr. Hardigre is an orthopedist retained by defendant-employer who did not treat plaintiff.
13. Plaintiff was unable to work for defendant-employer, or any other employer from 5 April 1997 through August 1998 due to her contraction of carpal tunnel syndrome. As a result of her situation, plaintiff returned to school at Gaston College studying medical assistant technology, attending school from 8:00 a.m. to 4:00 p.m. each day. Her classes required her to use a computer keyboard. Plaintiff wore her wrist splints while keyboarding. Plaintiff testified that once she began using the keyboard at school, the numbness and pain in her hands returned.
14. Plaintiff was hired in August of 1998 as a teachers aide earning a wage lower than that she was earning before the contraction of the work-related carpal tunnel syndrome.
 ***********
The foregoing findings of fact engender the following:
 CONCLUSIONS OF LAW
1. Plaintiffs bilateral carpal tunnel syndrome is due to causes and conditions characteristic of and peculiar to her employment with defendant-employer, is not an ordinary disease of life to which the general public not so employed is equally exposed, and is, therefore, a compensable occupational disease. N.C. Gen. Stat. 97-53(13).
2. At the time of plaintiffs contraction of an occupational disease, plaintiffs average weekly wage was $360.00, yielding a compensation rate of $240.12. N.C. Gen. Stat. 97-2(5).
3. As a result of her contraction of a compensable occupational disease, plaintiff is entitled to temporary total disability compensation at the rate of $240.12 per week, for the period from 5 April 1997 until she returned to work in August 1998. N.C. Gen. Stat. 97-29.
4. As a result of her contraction of an occupational disease, plaintiff is entitled to temporary partial disability compensation at the rate of two-thirds of the difference between $360.00 and her earning capacity beginning in August of 1998, and continuing, subject to the 300-week limitation, until plaintiff returns to work at the same or a greater average weekly wage than she earned prior to her compensable condition, whichever first occurs. N.C. Gen. Stat. 97-30.
5. Plaintiff is entitled to all medical expenses incurred or to be incurred by plaintiff as a result of her compensable condition. N.C. Gen. Stat. 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay temporary total disability compensation at the rate of $240.12 per week, from 5 April 1997 until she returned to work in August 1998.
2. Defendant shall pay plaintiff temporary partial disability compensation at the rate of two-thirds of the difference between her average weekly wage preceding her compensable condition and her earning capacity beginning in August of 1998, and continuing, subject to the 300-week limitation of N.C. Gen. Stat. 97-30. Such amount as has accrued shall be paid in a lump sum, subject to the attorneys fee below.
3. Defendant shall pay all medical expenses, incurred or to be incurred, by plaintiff as a result of her contraction of compensable carpal tunnel syndrome for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, or give relief, and will tend to lessen plaintiffs period of disability.
4. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under this AWARD is approved for plaintiffs counsel and shall be paid as follows: twenty-five percent of the accrued benefits due plaintiff shall be deducted from that sum and paid directly to plaintiffs counsel. Thereafter, every fourth compensation check shall be deducted from the sum due plaintiff and paid directly to plaintiffs counsel.
5. Defendant shall pay the costs of this appeal.
This is the ___ day of May, 2001
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER